IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | |
|---|---|
| CHARLES FRANCIS HURT, JR., | * |
| Plaintiff, | * |
| v. | *   No. 2:22-cv-00048-JJV |
| DEPARTMENT OF JUSTICE, *et al.*, | * |
| Defendants. | * |

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

Charles Francis Hurt, Jr. ("Plaintiff") brought this action, *pro se,* under the Federal Tort Claims Act ("FTCA"). (Doc. No. 13.)  In his Amended Complaint, Plaintiff alleged that negligent driving[1] by prison transport officers caused injury to his right wrist while he was being transported from the Forrest City Federal Correctional Complex (FCC) to the Federal Medical Center (FMC) Fort Worth from February 22 to February 23, 2021.  (*Id.* at 11, 18-25.)

Prior to trial, the Court appointed counsel[2] for Mr. Hurt.  (Doc. No. 56.)   On September 23, 2024, a Bench Trial was held at the Richard Sheppard Arnold United States Courthouse in Little Rock, Arkansas.  Following the presentation of testimony and the submission of other evidence, for the following reasons, I find Plaintiff did not meet his burden of proving by a preponderance of the evidence that negligent driving caused injury to his right wrist.  Accordingly,

---

[1] Following cross motions for summary judgment by Plaintiff and Defendant United States of America, Plaintiff's all other allegations of negligence, including negligence in the application of hand cuffs, were dismissed with prejudice. (Doc. No. 46.)  The sole remaining claim that proceeded to trial was negligent driving.
[2] The Court greatly appreciates the excellent representation of Plaintiff by Mr. Bobby R. Digby, II, Esq. and Mr. Matt Ingle, Esq. of the Digby Law Firm.

judgment will be entered in favor of Defendant United States of America and Plaintiff's Complaint is DISMISSED with prejudice.

## II. PLAINTIFF'S CLAIM

According to Plaintiff's Amended Complaint, negligent driving by prison transport officers during an inmate transport from FCC Forrest City, Arkansas to FMC Fort Worth, Texas from February 22 to 23, 2021, caused injury to Plaintiff's right wrist. (Doc. No. 13 at 11, 18-25.) Specifically, Plaintiff alleges erratic driving, swerving, and braking by the bus driver caused a fracture in his right wrist. (*Id*.) He contends the bus swerved repeatedly during the approximately nine-hour transport, and the force from those movements led to his right wrist injury. (*Id*. at 21.) Plaintiff alleges that his injuries were noted when he arrived at the FMC and that he underwent all treatment prescribed by his doctors. (*Id*. at 23.)

## III. TESTIMONY AND EVIDENCE

### A. Michelle Wingo, P.A.

Michelle Wingo is a physician assistant employed at FCC Forrest City for nearly fifteen years. She explained the process that prisons utilize when shipping inmates to another prison. She testified that nurses or other medical personnel evaluate inmates at both the shipping and receiving prisons to document any medical or health conditions of an inmate. While she did not perform the departure evaluation of Mr. Hurt, she was generally familiar with his evaluation and his various medical diagnoses contained therein, including diabetes and diabetic neuropathy.

Of particular importance was Defendant's Exhibit 1, (Bates 590-598), the record of Plaintiff's examination before departure from FCC Forrest City on February 22, 2021, and the examination performed when Mr. Hurt arrived at FMC Fort Worth on February 23, 2021.[3] Ms.

---

[3] Selected Medical Records of Charles Hurt, Jr. was Defendant's Exhibit 1. Defendant's Exhibit 1 was admitted prior to trial.

Wingo reviewed the records and agreed that, upon arrival at FMC Fort Worth, there was no report of any wrist pain or wrist injury on the health screen form under the "current painful conditions" section. (*Id.* at 594.) She also agreed that no wounds or body deformities were recorded.

When asked about the record from a Clinical Encounter on February 25, 2021, Ms. Wingo agreed the subjective section on the form stated that Mr. Hurt was "seen in clinic for complaint of right wrist pain x one week" and complained his right wrist was injured by handcuffs while being transported to FMC Fort Worth on the bus. (*Id.* at 600.) An X ray was performed, and the result showed "a subtle hairline nondisplaced fracture of the ulnar styloid at the base." (*Id.* at 634.)

**B.     Donald Smith**

Donald Smith mainly works at the UNICOR factory at FCC Forrest City, but part of his collateral duties includes assisting with the transport of inmates as a member of the bus crew. Officer Smith previously worked in prison transport for 12 years and testified that he was an officer in the bus crew that transported Plaintiff to FMC Fort Worth. Officer Smith testified he specifically remembered Mr. Hurt because, prior to his transport on February 22, 2021, Mr. Hurt's New Balance shoes had to be taken from him because they were not authorized medical shoes and should have been packed in his bags prior to departure.

Officer Smith testified about how inmates are generally restrained during transport. He explained that the restraints include frontal hand restraints connected to a "belly chain" that goes around the midsection of an inmate, as well as leg shackles. He stated that inmates wear normal sized hand restraints during transport to prevent manipulation. However, if the space between the inmate's wrist and the cuff will not allow an officer to slide his finger inside the cuffs, larger, "big boy," cuffs are provided to the inmate. Officer Smith stated he did not apply hand restraints to

Plaintiff's wrists prior to transport. Officer Smith further stated that inmates are not shackled together before, during, or after transport unless there is an emergency.

Officer Smith generally explained the transport conditions. He described that the bus is equivalent to a "Greyhound bus" and that inmates sit side by side on bench seats. A lieutenant sits at the front of the bus with the driver and two officers are in the rear of the bus in a "caged in" area. Transport officers rotate driving duty during a transport as is necessary. He also stated water the water coolers were filled up prior to departure and, if necessary, they will stop and get more water for the inmates to drink on the trip. Officer Smith testified that the buses used for transport feature a governor that limits the speed of the bus to seventy-one miles per hour. While Officer Smith did not recount many details of the trip, he testified he remembered this trip to be a normal driving trip, that the weather during the transport was clear, and he did not recall ice on the road.

      C.      **Charles Francis Hurt, Jr.**

Plaintiff testified on his own behalf. On direct examination, Plaintiff stated that prior to transport to FMC Fort Worth, he had always been allowed to use "big boy" cuffs during transports. He testified that the officer who placed him in hand restraints did not check for space between his wrists and the cuffs, and the officer denied Plaintiff's request for "big boy" cuffs. He also stated that before transport, his New Balance shoes were taken from him along with his over-the-ankle socks, and he was supplied deck shoes and ankle socks for transport.

Plaintiff testified that he sat behind the driver in a bench seat with inmate Charles Underwood. He stated that the bus left FCC Forrest City after midnight, on February 23, 2021. Plaintiff recalled that there was snow on the ground at the time of departure. Officer Smith drove the bus and immediately began driving erratically by braking, jerking, and contacting rumble strips. He stated this happened multiple times during the transport. He testified that at one point,

the bus took a curve and "went up on two wheels." Plaintiff also stated that the front windshield was fogging, which caused the transport to stop for a time in Texas.

Plaintiff stated that prior to departure from FCC Forrest City, he had no injury to his right wrist, but when he arrived at FMC Fort Worth, he told medical staff his wrist had been injured but they failed to write it down. He further said that the staff wrote he had knee pain and that was also incorrect. (*Id.* at 594.)

Plaintiff explained that he was later seen by Dr. Charles Eilert on February 25, 2021, and an x-ray of his wrist showed his bone was broken. He experienced pain and lack of mobility in his right wrist, and as a result, he underwent physical therapy. Plaintiff said the x-ray showed a fracture in his right wrist, that he was given an ace wrap bandage and ice for his pain, and that he was referred to an orthopedic surgeon.

On cross examination, defense counsel questioned Plaintiff about his medical records contained in Defendant's Exhibit 1. Plaintiff conceded that the health screen paperwork from intake upon his arrival at the FMC did not reflect that he complained of right wrist pain or injury. However, Plaintiff was adamant that he complained about his wrist and suggested medical staff omitted it from his health screening. When asked about the clinical encounter paperwork associated with the x-ray, Plaintiff also conceded that the subjective portion of the paperwork stated he suffered wrist injury from the handcuffs used during transport and not erratic driving.

Defendant continued to question Plaintiff about his medical records. Mr. Hurt agreed that on April 2, 2021, he reported that his right wrist pain was tolerable with Naproxen during a sick call. Plaintiff confirmed that he visited an orthopedic hand surgeon on June 11, 2021, and the hand surgeon's note reported that it was handcuffs that caused Plaintiff's wrist injury. Plaintiff confirmed a second x-ray of his right wrist was taken that day and revealed a healed ulnar styloid

5

fracture and no acute bony abnormality.  Plaintiff conceded that the hand surgeon never ordered surgery for Plaintiff.  He was seen by an occupational therapist on October 18, 2021, and stated that he fell on his bed prior to the appointment, causing right wrist pain.  An x-ray was taken shortly after, and no right wrist fracture was found.  His last request for an X-ray of his right wrist was on November 29, 2021, and was performed on December 7 of the same year.  That X-ray again revealed no fracture or joint malalignment in Plaintiff's right wrist.  At the close of cross examination, Plaintiff conceded that no other medical provider aside from Dr. Eilert recommended surgery for his right wrist and that he never underwent wrist surgery.

      **D.**      **Jeffrey Norris**

Jeffrey Norris has been employed by FCC Forrest City for eighteen years and has been a lieutenant on the bus crew since 2020.  On direct examination, Lt. Norris first testified about the restraints used on inmates during transport and about post orders for airlift/bus operations.[4]  He explained leg irons restrain the legs of inmates, and a belly, or "Martin" chain wraps around the stomach of an inmate and connects to the restraint on inmate's wrists.  Lt. Norris stated that "big boy" cuffs are used to restrain the hands of inmates with abnormally large wrists, but such cuffs are not used on inmates with smaller wrists.  He explained that an inmate qualifies for "big boy" cuffs if an officer cannot slide his or her finger in the space between an inmate's wrist and the hand restraint.  Lt. Norris did not recall whether Plaintiff requested "big boy" cuffs.  He also explained that inmates are never chained together during transport unless there is an emergency.

When describing the bus used to transport inmates, Lt. Norris stated that transport buses can seat up to forty inmates and has seating for four officers: the bus lieutenant sits behind the driving officer and two other officers sit at the back of the bus.  Officers are separated from inmates

---

[4] FCC Forrest City, Arkansas Specific Post Orders for Airlift/Bus Operations was Defendant's Exhibit 2.  Defendant's Exhibit 2 was admitted prior to trial.

by a caged area. Inmate seating on the transport bus consists of two rows of bench seats, with ten benches in either row, allowing two inmates to sit on a bench seat. Lt. Norris testified that officers would generally rotate driving duty when the driver was too tired to continue.

Lt. Norris testified that during the trip from FCC Forrest City to FMC Fort Worth, there were no accidents or mechanical failures, there was no severe weather, and there was no unusual driving, fishtailing, or contact with rumble strips that he recalled. Lt. Norris testified that if inmates had complained about driving during the transport, a supervisor would have notified him, but none did. He stated that the transport bus had eight total wheels, and at no point did the bus travel on only two wheels.

E. **Vernon Alice**

Vernon Alice is a correctional officer at FCC Forrest City and has been employed in that position for about eight years. Officer Alice was part of the transport crew that transported Plaintiff and other inmates from FCC Forrest City to FMC Fort Worth. Officer Alice testified that he was a transport crew trainee at the time, and as a result, did not apply any restraints to inmates. He testified that he only assisted inmates by helping them with transport dress and that he helped conduct searches of the inmates being transported.

Officer Alice stated that, as a trainee, he was on the bus crew to observe. He sat in the back of the bus with Officer Randy Coney. Officer Alice stated that during the trip, there was a brief stop at a gas station. To Officer Alice's knowledge, Officer Smith drove the entire distance from FCC Forrest City to Fort Worth, Texas. Officer Alice did not recall swerving, excessive braking, weight shifts, or contact with rumble strips during the transport. He also said that the bus never travelled on only two wheels. Officer Alice testified that neither Plaintiff nor any other inmate on the transport complained to him about suffering injury during the trip.

**F.     Plaintiff's Exhibits**

*1.     Deposition Testimony of Dr. Charles Eilert*

Dr. Charles Eilert is a medical officer at the FMC Fort Worth and was employed in the same position in February of 2021. (Pltf. Ex. 1 at 6.) While Dr. Eilert did not remember treating Plaintiff, he was shown medical records detailing such treatment. (*Id*. at 7-10, 12.) He confirmed that on February 25, 2021, Plaintiff presented to him with right wrist pain, and an x-ray of Plaintiff's wrist revealed a displaced fracture of the ulnar styloid. (*Id*. at 8.) Dr. Eilert reiterated that he did not specifically remember treating Plaintiff, but he did record Plaintiff's complaint of injury. (*Id*. at 10.) He confirmed that he requested an urgent hand surgery evaluation for Plaintiff on February 26, 2021. (*Id*. at 12.) He further confirmed that after reviewing records made by a hand surgeon, Dr. Plenkis, no surgery was prescribed for Plaintiff's right wrist fracture. (*Id*. at 14-15.)

*2.     Deposition Testimony of Dr. Hernan Reyes*

Dr. Hernan Reyes is a physician who contracts with the BOP. (Pltf. Ex. 2 at 6.) Dr. Reyes did not specifically remember treating Plaintiff but confirmed that he did provide medical services to Plaintiff in February of 2021 based on a review of his records. (*Id*. at 7.) He stated that when Plaintiff encountered him during a chronic care visit, Plaintiff informed him that Plaintiff had a fractured right wrist. (*Id*. at 8.) Dr. Reyes did not believe that Plaintiff was lying about his condition. (*Id*. at 9-10.) He confirmed that the hand surgeon did not recommend surgery for Plaintiff and that the hand surgeon noted the fracture was healed. (*Id*. at 12-13.)

*3.     Deposition Testimony Charles Underwood*

Charles Underwood was an inmate at FCC Forrest City and was transported with Plaintiff to FMC Fort Worth. (Pltf. Ex. 3 at 7.) When asked about an affidavit he signed that was drafted

8

by Plaintiff, he confirmed that the allegations of fact in the affidavit were accurate. (*Id*. at 8.) Mr. Underwood stated that he sat next to Plaintiff on the transport bus and that the pair were handcuffed together. (*Id*. at 11.) He recalled that they were handcuffed and shackled together before the transport bus departed FCC Forrest City. (*Id*.) Mr. Underwood stated that there was ice on the roads and that the bus was unstable during the transport. (*Id*. at 12.) He confirmed that the bus contacted rumble strips, swerved, jerked, and fishtailed on multiple occasions. (*Id*. at 13.) Mr. Underwood stated that Plaintiff had difficulty walking and using his wrist upon arrival at the FMC. (*Id*. at 15.) He did not recall Plaintiff having any injuries prior to departure from FCC Forrest City. (*Id*. at 16.) Mr. Underwood later admitted he was unhappy that he was transferred to Fort Worth, Texas. (*Id*. at 18.) Toward the end of his deposition, he repeated that there was snow on the ground at FCC Forrest City during the time of the transport. (*Id*. at 19.) He conceded the handcuffs placed on Plaintiff's wrists were the main issue and stated Plaintiff's restraints were too tight, but he was adamant that the driving of the transport bus did not help the situation. (*Id*. at 20.)

**IV.   ANALYSIS**

   **A.   Negligent Driving Claim**

Under the FTCA, the court must apply the tort law of the state "where the act or omission occurred." *Brownback v. King*, 592 U.S. 209, 212 (2021); *see also Shanner v. United States*, 998 F.3d 822, 824 (8th Cir. 2021). Because Plaintiff alleged negligent driving occurred throughout the transport from Arkansas to Texas, the tort law of both states applies. To prevail on a claim of negligence under the law of both states, Plaintiff must prove that (1) Defendant owed a duty to Plaintiff, (2) Defendant breached the duty, and (3) Defendant's breach was the proximate cause of Plaintiff's injury. *Ark. Dev. Fin. Auth. v. Wiley*, 611 S.W.3d 493, 499 (Ark. 2020); *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017). Plaintiff had the burden of proving his case by a

preponderance of the evidence. *Mangrum v. Pigue*, 198 S.W.3d 496, 503 (Ark. 2004); *Burlington-Rock Island R. Co. v. Ellison*, 167 S.W.2d 723, 726 (Tex. 1943).

After careful consideration of the evidence in this case, I find Plaintiff failed to prove by a preponderance of the evidence that negligent driving on the part of the federal transport officers caused injury to his right wrist. First and foremost, the *absence of any mention* of wrist pain in the intake records from FMC Fort Worth are devastating to Plaintiff's claims. (Def. Ex. 1, Bates 592-598.) As I discussed with Plaintiff when he testified, the intake records are excruciatingly detailed, including, *inter alia*, his travel history, medical history (current and past), allergies, mental health history, and patient education topics. Plaintiff admitted all the history was correct and had no plausible explanation as to why his severe wrist pain was excluded.

Mr. Underwood described Mr. Hurt's injury during his deposition, "His wrist was swelling up. He had marks and - - like went into his skin, like the metal went into his skin. He had abrasions and stuff." (Pltf. Ex. 3 at 15.) If this was true, it does not seem possible that, at intake, medical personnel would have ignored it.

Plaintiff testified that the bus was frequently braking, jerking, and contacting rumble strips throughout the transport, a proposition that is supported in the deposition testimony of Mr. Underwood. But I am unable to find Mr. Underwood's testimony credible. This is especially true considering the testimony of the prison transport officers - each of whom testified that they did not recall unusual or erratic driving. Plaintiff's emphatic testimony that the bus went up on two wheels when taking a curve is also not believable. Lieutenant Norris testified that the bus had eight wheels and never travelled on two wheels during the transport, a statement supported by the testimony of Officer Alice. Lt. Norris further testified that he received no complaints about erratic driving on

the way to FMC Fort Worth. Given Plaintiff's description of the driving, it seems highly likely that other inmates would have complained.

Lastly, the medical records show that Plaintiff complained several times that it was the handcuffs that caused his injury – and not negligent driving. (*Id.* at 600, 624, 634, 727.) And the handcuff claims are not actionable based on the discretionary function exception. (Doc. No. 46 at 5-8.)

Accordingly, the Court finds Plaintiff has not met his burden of proving, by a preponderance of the evidence, that negligent driving by prison transport officers caused injury to Plaintiff's right wrist.

## V. CONCLUSION

After careful review of the testimony and evidence, the Court finds Plaintiff has failed to prove his claim against Defendant United States of America by a preponderance of the evidence, and judgment should be entered in favor of Defendant United States of America.

IT IS, THEREFORE, ORDERED that:

1. Plaintiff's negligent driving claim is dismissed with prejudice. An appropriate Judgment shall accompany this Memorandum and Order.

2. Pursuant to 28 U.S.C. § 1915(a)(3), an *in forma pauperis* appeal from this Memorandum and Order or the accompanying Judgment would not be taken in good faith.

Dated this 3rd day of October 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE